UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DWIGHT E. ROBBINS,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )       Civil Action No. 11-2207 (EGS)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

Plaintiff Dwight E. Robbins alleges that he was discriminated against because of his race and was subjected to retaliatory acts during his employment with the District of Columbia Public Schools ("DCPS"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Following a period of discovery, the District of Columbia, as the real party in interest, moves for summary judgment under Fed. R. Civ. P. 56 [Dkt. # 24], plaintiff, through counsel, opposes the motion [Dkt. # 32], the District has replied [Dkt. # 36], and plaintiff, by leave of court, has filed a surreply [Dkt. # 38]. Upon consideration of the parties' submissions and the entire record, the Court will grant the District's motion and enter judgment accordingly.

**I. BACKGROUND**

DCPS hired plaintiff in 1982 as an Educational Aide. At the time of his separation in August 2011, plaintiff was a full-time teacher. Compl. ¶ 11. During school year 2009-10, plaintiff was a physical education (PE) teacher at Eastern High School, but at the end of the school year, plaintiff's position was eliminated or "excessed." Def.'s Statement of Material Facts as to Which There is No Genuine Dispute (Def.'s Facts) ¶ 1. Under the terms of the then-

1

operative contract between DCPS and the Washington Teachers' Union (WTU), excessing occurred at a particular school when there was "a decline in student enrollment, a reduction in the local school budget, a closing or consolidation, a restructuring, or a change in the local school program, [and] when such an elimination [was] not a 'reduction in force' or 'abolishment.' " *Id*. ¶ 2 (citing 2007-2012 Collective Bargaining Agreement [Dkt. # 32-3]).

Plaintiff had three options as an excessed teacher. He could (1) resign and receive a $25,000 buyout, (2) retire with full benefits if he had 20 years of creditable service, or (3) attempt to secure a position at another school but, if unsuccessful, agree to be placed at another school for one year and thereafter lose his DCPS position if he did not secure another position. *Id*. ¶ 3. Plaintiff "was told that he was ineligible for early retirement," Compl. ¶ 17, chose the third option, and was placed at Jefferson Middle School as a full-time PE teacher beginning August 2010. Def.'s Facts ¶¶ 6-7; Compl. ¶ 14.

At the relevant time period, Patricia Pride, "a Caucasian female, was assigned to Jefferson as the new Principal." Compl. ¶ 14. Upon learning of plaintiff's assignment to Jefferson, Pride adjusted the previously created teaching assignment schedule "to make sure [plaintiff] would have his own schedule of classes" since the school already had half-time PE teacher Howard Mebane. Def.'s Ex. B, Decl. of Ms. Patricia Pride (Pride Decl.) ¶¶ 7-8, 10. Plaintiff "was given the same responsibilities as all other full[-]time teachers at Jefferson." *Id*. ¶ 9. Initially, neither plaintiff nor Mebane (an African American man) was assigned a homeroom. *Id*. ¶ 12. But after Pride noticed that two first-year teachers assigned homerooms were struggling with their duties, she assigned homerooms to plaintiff and Mebane so that the two struggling teachers could focus on their class preparation and instruction. *Id*. ¶ 13. Pride also "determined that it was appropriate to assign [plaintiff] a home room because he did not have a

2

full class schedule at the time" and this assignment would bring him closer to having a "full class schedule." *Id*. Pride avers that she "did not consider race" in assigning homerooms, and that all but three teachers--the two who were struggling and a third teacher who agreed to perform other additional duties--had homeroom assignments. *Id*. ¶¶ 13, 14.

In February 2011, plaintiff complained in correspondence to Pride about an uneven distribution of homeroom teachers based on academic disciplines. Specifically, plaintiff took issue with the fact that he and Mebane, the two PE teachers, were assigned homerooms while three other teachers, two of whom taught English, were not assigned home rooms. Def.'s Fact ¶ 18. When Pride explained, but did not change, the homeroom assignments, plaintiff filed a grievance and had a hearing in March or April of 2011 with DCPS's Assistant Superintendent Eric King and WTU's Field Representative Rachel Hicks. *Id*. ¶ 20.

In his deposition taken in June 2013, plaintiff answered "Yes" to the question of whether he told Pride in a "verbal" conversation that he "may contact the EEOC." Def.'s Ex. A, Pl.'s Dep. 85:10-12. In addition, plaintiff testified that "[e]very African American teacher in the building had a home room" and that "three Caucasian teachers . . . on the second floor [] did not have a home room." *Id*., 82:10-11, 15-17. Plaintiff could not recall whether any Caucasian teacher was assigned a home room but admitted that the school employed more than three Caucasian teachers. *Id*., 83:1-6. Also during discovery, plaintiff stated in further support of his discrimination claim only that he had "described, in great deal, my race discrimination and retaliation claims against the Defendant in my Complaint." Def.'s Ex. D, Pl.'s Resp. to Interrog. No. 13.

In March 2011, plaintiff learned about a vacant PE teacher position at Jefferson for the following school year, 2011-12. Pride offered the position to Mebane "because he had worked

3

as a [PE] teacher, but he declined the position." Pride Decl. ¶ 19. Plaintiff gave his resume to Pride who states that she placed the resume in a file with all other resumes and "gave the file . . . to the office secretary and a personnel committee, as they were reviewing resumes for the position and scheduling a first round of interviews, which they would conduct." *Id*. ¶ 20. Pride further states that she suggested that the office secretary and personnel committee "conduct approximately five interviews because we had received a significant number of resumes," and that "they begin with veteran teachers who are already certified." *Id*. ¶ 21. Otherwise, Pride states that she played no role in the initial selection of qualified applicants and the first-round interviews, and she "do[es] not know how many first round interviews were conducted." *Id*. Plaintiff was not selected for a first-round interview. Def.'s Facts ¶¶ 36-37. Plaintiff disputes, among other things about the selection process, that the personnel committee had "receive[d] any resumes in advance of the interviews and had [] input . . . into who was selected to interview for the PE position." Pl.'s Statement of Material Facts in Genuine Dispute in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ¶ 2 (citing Decl. of Monica Jones-Martinez [Dkt. # 32-7]).

According to Pride, the office secretary and the committee selected two finalists, an African American woman and a Caucasian woman, and forwarded their names to Pride, who interviewed the two finalists "by phone." Pride Decl. ¶ 23; Def.s Facts ¶¶ 38-39. Pride selected Vicki Cable, who she "determined . . . was the best qualified individual for the position because of [Cable's] experience as a Master Educator with DCPS and her past experience as a [PE] teacher." Pride Decl. ¶ 24.

Plaintiff did not pursue any other teaching positions for school year 2011-12 and was officially terminated effective August 12, 2011. Def.'s Facts ¶¶ 42-43. Plaintiff alleges that he "exhausted all of his administrative remedies" and received the EEOC's "Dismissal and Notice

4

of Rights, dated September 7, 2011." Compl. ¶¶ 7-8. He filed this civil action in December 2011.

In Count I of the Complaint, plaintiff alleges, *inter alia*, that he, an African American male, was "treated differently regarding [employment] opportunities . . . than Caucasian females applying for similar teaching positions" and that defendant's alleged racial discrimination "caus[ed] Plaintiff loss of employment and severe financial hardship." Compl. at 6. In Count II, plaintiff alleges, *inter alia*, that "[a]s a result of Plaintiff's comments concerning the EEOC, Ms. Pride ensured that Plaintiff's position would not be included in the next year's school budge[t]." *Id*. at 7.

## II. LEGAL STANDARD

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ .P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex*, 477 U.S. at 323. In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. In addition, "although summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Adair v. Solis*, 742 F. Supp. 2d 40, 50 (D.D.C. 2010), *aff'd*, 473 Fed. Appx. 1 (D.C. Cir. 2012) (internal quotation marks and citations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Plaintiff (1) concedes "to dismissal of Count I, the race discrimination claim," (2) confirms that the complaint does not contain a hostile work environment claim, and (3) acknowledges that he cannot recover punitive damages from the District. Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1, n.1. Hence, the only issue is whether a trial is warranted on plaintiff's claim of retaliation comprising Count II of the complaint.

Title VII's anti-retaliation provision "makes it unlawful for an employer to:

> discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Howard R.L. Cook & Tommy Shaw Fdt'n for Black Employees of the Library of Congress v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (quoting 42 U.S.C. § 2000e–3(a)). "This

provision protects employees who file discrimination charges (or engage in other statutorily protected activity) from materially adverse retaliation by their employers." *Id*. (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)). To prove his retaliation claim, plaintiff must show through competent evidence that he suffered a materially adverse action as a result of his statutorily protected activity. *Id*. In other words, he "must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Unlike the "motivating-factor standard" applicable to Title VII discrimination claims, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2527, 2528 (2013).

Since plaintiff has not pointed to any direct evidence of retaliation, his claim is subject to analysis under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). The Court of Appeals has instructed that when the defendant articulates a legitimate, non-retaliatory reason for the adverse employment action, " 'the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence,' which includes . . . the prima facie case [and] the evidence the plaintiff offers to 'attack the employer's proffered explanation for its action' and other evidence of retaliation." *Id*. (quoting *Carter v. Geo. Wash. Univ*., 387 F.3d 872, 878 (D.C. Cir. 2004).

Defendant's evidence shows that plaintiff lost his teaching position due to excessing and his inability to secure another position for school year 2011-12. Plaintiff counters this legitimate,

7

non-retaliatory reason by disputing Pride's version of the hiring process. *See generally* Pl.'s Statement of Disputed Facts. But, as discussed next, this dispute is immaterial because plaintiff has failed completely to adduce evidence on the first element of his retaliation claim and, thus, cannot avoid summary judgment.

Plaintiff must prove at trial that he opposed a practice made unlawful under Title VII. "But if the practice the employee opposed is not one that could reasonably and in good faith be regarded as unlawful under Title VII, this element is not satisfied." *McGrath*, 666 F.3d at 1380. In his letter to Pride dated February 14, 2011, and in follow-up correspondence, plaintiff opposed the homeroom assignments but not for any reason proscribed by Title VII. *See* 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees . . .in . . . the District of Columbia . . . .shall be made free from any discrimination based on race, color, religion, sex, or national origin.").

During discovery conducted in 2013, plaintiff stated that he had "raised concerns with Ms. Pride that she made unequal and discriminatory assignments of homerooms for the teachers in the school." Def.'s Ex. D, Pl.'s Resp. to Def.'s Interrog. # 13. But the actual letter dated February 14, 2011, does not mention race or any other protected status as the basis of plaintiff's complaints about the homeroom assignments. Plaintiff writes: "In my 30 years of teaching in DCPS, normally [PE] Teachers are not assigned homeroom because of the need to get the gymnasium ready for classes." Pl's Ex. [Dkt. # 32-3] at 94. He continues: "The scheduling of homeroom should be done on an equal basis. If Mr. Mebane and I [the two PE teachers] . . . both have a homeroom assignment, we will ended [sic] up covering both homeroom groups if he is/or I am absent." *Id*. Plaintiff names "three other teachers without homerooms," again without any mention of their race or any other protected status, and then questions the fairness of the

8

homeroom assignments to him and Mebane since Mebane, as a half-time employee, had to shoulder two classes and a homeroom "while three [full-time] teachers . . . have none." *Id*. Plaintiff concludes: "I think a second look at the schedule is warranted. I did not cause my situation to be as it is." *Id*. In addition, the following colloquy is taken from plaintiff's deposition:

> Q. When you made your complaint to Ms. Pride, did you complain that it was because of race, you thought, that the distribution was unequal?
> A. No. I actually did it because the discipline wasn't equal.
> Q. Because of the disciplines?
> A. Yes. Because there were two English teachers on that floor that didn't have home rooms.

Pl.'s Dep. 83:7-14.

Plaintiff points to other evidence in the record that does nothing to advance this claim. He refers to Pride's e-mail dated March 3, 2011 -- conveying her belief that the homeroom issue had been resolved while also acknowledging plaintiff's "other issues with the district office regarding your years and retirement" -- and his response: "The time it has taken you to reply speaks for itself. EEOC." Pl.'s Ex. [Dkt. # 32-4]. And plaintiff refers to his response dated April 27, 2011, to another of Pride's e-mails about homeroom assignments in which he states: "I feel you have continuing [sic] to disrespect me, by continuing delaying, telling half truths. I will be following the chain of command by filing a Step 3 Grievance on this matter." Pl.'s Ex. [Dkt. # 32-3]. But union grievances and general complaints about unfair treatment do not constitute protected activity under Title VII. *See Ramey v. PEPCO*, 468 F. Supp. 2d 51, 59 (D.D.C. 2006) (a union grievance that does not allege "discrimination or another practice made unlawful under Title VII" is not statutorily protected activity); *Welzel v. Bernstein*, 436 F. Supp. 2d 110, 122-23 (D.D.C. 2006) (complaints about "unprofessional and abusive behavior" and general complaints about unfair treatment absent a stated belief that such behavior violates Title VII are "not

protected under Title VII") (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)) (other citations omitted). Plaintiff's mere mention of "EEOC" is not a fact or evidence upon which a jury can deliberate. Tellingly, when plaintiff was pressed during discovery to state facts supporting his Title VII claims, he responded that he had "described, in great deal, my race discrimination and retaliation claims against the Defendant in my Complaint." Def.'s Ex. D, Pl.'s Resp. to Interrog. No. 13. But plaintiff cannot rely on this vague reference to the complaint containing conclusory allegations to avoid summary judgment.

When, as found here, a plaintiff fails to adduce any evidence on an element of his claim after adequate time for discovery, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. Hence, the Court finds that defendant is entitled to judgment as a matter of law on the only contested claim of retaliation.

## CONCLUSION

For the foregoing reasons, the Court concludes that no material fact is in genuine dispute and that defendant is entitled to judgment as a matter of law. A separate order accompanies this Memorandum Opinion.

    SIGNED:    EMMET G. SULLIVAN
    UNITED STATES DISTRICT JUDGE

DATE: September 10, 2014